**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRADLEY S. DWORKIN and THE LAW OFFICES OF BRADLEY S. DWORKIN, P.C., individually and on behalf of all others similarly situated, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 26 C 3400 |
| | ) | Judge Sara L. Ellis |
| TANDEM PROFESSIONAL EMPLOYER SERVICES II, LLC, and VENSURE EMPLOYER SERVICES, INC., | ) | |
| Defendants. | ) | |

# OPINION AND ORDER

Plaintiffs Bradley S. Dworkin and his law firm, The Law Offices of Bradley S. Dworkin, P.C. (the "Firm"), used Defendant Tandem Professional Employer Services II, LLC ("Tandem") for payroll processing, tax administration, and other employment services. After Tandem retained interest payments on tax credits owed by the Internal Revenue Service ("IRS") to the Firm, Plaintiffs filed this putative class action lawsuit claiming that Tandem and the company that acquired it, Vensure Employer Services, Inc. ("Vensure"), improperly retained the interest payments as an undisclosed fee. Plaintiffs bring claims for breach of contract and breach of fiduciary duty. Defendants have moved to compel arbitration and stay this case or, alternatively, to dismiss portions of Plaintiffs' claims and strike the class allegations.[1] Because the Firm and Tandem's arbitration provision requires an arbitrator, not the Court, to decide questions of

[1] Defendants argue that Dworkin is not a proper plaintiff because he has no individual claims and only asserts claims on behalf of the Firm, which he owns. Dworkin does not respond to this argument, essentially conceding the issue. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("[f]ailure to respond to an argument . . . results in waiver" and "silence leaves us to conclude" concession). Therefore, the Court dismisses Dworkin as a Plaintiff and proceeds as if the Firm only asserts the claims.

arbitrability, the Court compels arbitration of the Firm's claims against Tandem. And although the record before the Court does not provide a basis to allow Vensure to compel arbitration of the claims the Firm asserts against it, the Court in its discretion stays those claims as well pending the outcome of the arbitration.

**BACKGROUND**

Dworkin owns the Firm, which provides legal services to clients. Tandem, a Certified Professional Employer Organization ("CPEO"), provides payroll processing, tax administration, human resources, and other employment services to clients across the United States. Vensure acquired Tandem in 2024, assuming Tandem's contractual obligations and liabilities. Vensure now operates Tandem's business. Vensure and Tandem operate with unified management, operations, and business policies.

On January 1, 2019, the Firm entered a CPEO service agreement (the "Service Agreement") with Tandem. Tandem agreed to provide comprehensive employment-related services to the Firm, including handling all tax-related matters on the Firm's behalf. Schedule A to the Service Agreement set forth the fees and charges that Tandem would collect from the Firm, including administrative fees, out-of-cycle processing fees, state unemployment tax administration fees, setup fees, termination fees, and other enumerated charges. The Service Agreement did not provide that Tandem would retain interest payments on tax refunds as fees or other compensation. It also does not require that the Firm request interest payments nor does it grant Tandem the right to interest received from the IRS on delayed refunds.

The IRS established the employee retention credit ("ERC") in 2020 to encourage employers to keep employees on the payroll during the Covid-19 pandemic by providing tax credits for qualified wages paid to employees in 2020 and 2021. Employers could claim the

ERC by filing amended quarterly employment tax returns with the IRS. But the IRS experienced significant delays in processing the ERC claims, with delays of between one to three years common. 26 U.S.C. § 6611 provides that the IRS must pay interest on a delayed refund.

In June 2022, Tandem approached the Firm about filing ERC claims. The Firm then executed an Employee Retention Tax Credit ("ERTC") Affirmation on June 23, 2022, which authorized Tandem to submit ERC applications on the Firm's behalf. The ERTC Affirmation provided that the Firm sought ERC tax credits for all four quarters of 2020 and the first three quarters of 2021. While the Firm authorized Tandem to apply for the tax credits, the ERTC Affirmation indicated that the Firm was "ultimately responsible and liable to Tandem for any amounts paid or credited to Company as tax credits for which Tandem has not been reimbursed or paid by Client." Doc. 1-2 at 7. Tandem then prepared and filed amended quarterly employment tax returns with the IRS on the Firm's behalf, filing the claims across multiple federal employer identification numbers because the Firm has worksites in multiple states. In total, between September 2022 and April 2025, Tandem received and remitted to the Firm the principal amounts of sixteen ERC refund payments, totaling $880,468.70. Two additional claims for $738,995.84 remain outstanding.

Tandem did not disclose or remit any interest payments it received from the IRS on the delayed refunds. The Firm discovered that Tandem had received and retained these interest payments in October 2025 and immediately demanded that Tandem provide the Firm with an accounting of all interest Tandem had received and remit those payments to the Firm. Laura Sexton, Vensure's tax advisor, acknowledged to the Firm on October 20 that, because "Vensure acquired Tandem just last year," she was "unsure what agreements if any there were with respect to ERC interest." *Id.* at 76. On November 6, 2025, Sexton wrote further, stating: "I was

informed that ERC related interest was passed through upon request and that there was no prior record of a request for interest on your ERC claims. I have asked for the interest computations for your ERC claims and will send as soon as I have that information[.]" *Id.* at 13. Sexton provided the interest computations on November 8, indicating that Tandem had retained approximately $164,815 in ERC interest. Because two additional ERC claims remained outstanding as of the time the Firm filed the complaint, the Firm estimates that the IRS owes it another almost $90,000 in ERC interest.

**LEGAL STANDARD**

Section 3 of the Federal Arbitration Act ("FAA") requires courts to stay a proceeding and to compel arbitration of any matter covered by a valid arbitration agreement. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). A federal court may compel arbitration where there is (1) a written agreement to arbitrate, (2) a dispute within the scope of the agreement, and (3) a refusal to arbitrate by one of the parties to the agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Agreements mandating arbitration are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Contract defenses, such as fraud, duress, and unconscionability, apply to agreements to arbitrate. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). The party seeking to avoid arbitration bears the burden of establishing why the Court should not enforce the arbitration agreement. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000).

**ANALYSIS**

Defendants argue that the Court must compel arbitration of the Firm's claims based on the Service Agreement's arbitration provision. The Service Agreement's arbitration provision states:

> If there is a dispute between the Parties concerning any aspect of their relationship or this Agreement, except for the payment of fees to Tandem, either Party to such dispute may elect to arbitrate the dispute by serving written notice upon the other. . . . The Commercial Arbitration Rules of the American Arbitration Association and the Federal Arbitration Act shall be applied to and govern the arbitration. The arbitrator's decision shall be final, conclusive and binding, except as permitted by the Federal Arbitration Act. The arbitrator shall have no authority to add to, subtract from, or modify in any manner the terms and provisions of this Agreement.

Doc. 1-2 at 41.[2]

The Court typically determines the enforceability of an arbitration provision, but "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 68–69; *see also New Prime Inc. v. Oliveira*, 586 U.S. 105, 111–12 (2019) ("A delegation clause gives an arbitrator authority to decide even the initial question whether the parties' dispute is subject to arbitration."). "[P]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

[2] The fact that the arbitration provision uses seemingly permissive language in stating that a party "may elect to arbitrate" does not give the parties the right to choose either arbitration or litigating in court. *See Ceres Marine Terminals, Inc. v. Int'l Longshoremen's Ass'n, Loc. 1969, AFL-CIO*, 683 F.2d 242, 246 (7th Cir. 1982).

The Firm contends that the arbitration provision does not apply because the dispute between the parties involves the payment of fees to Tandem, which the arbitration provision specifically carves out from the universe of arbitrable disputes. Defendants argue, however, that the arbitration provision incorporates the Commercial Arbitration Rules of the American Arbitration Association, which include a delegation provision. Commercial Arbitration Rule R-7(a) provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." Am. Arbitration Ass'n, Commercial Arbitration Rules and Mediation Procedures, https://www.adr.org/media/ueonklrv/2026_commercial-arbitration-rules-mediation-procedures.pdf. This, according to Defendants, means that the arbitrator, and not the Court, must determine whether the claims fall within the arbitration provision.

The majority of courts to consider the issue have concluded that the incorporation of the AAA's rules into an arbitration agreement demonstrates a clear and unmistakable intent to delegate arbitrability questions. *See Tel. Invs. USA, Inc. v. Lumen Techs., Inc.*, No. 22-CV-2260, 2022 WL 2828751, at *4 (N.D. Ill. July 20, 2022) ("[A]lthough the Seventh Circuit has not addressed this issue, the consensus view among district courts in this circuit and among the other appellate circuits holds that reference to or incorporation of AAA rules constitutes clear and unmistakable evidence to delegate arbitrability to an arbitrator."); *Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 458–59 (N.D. Ill. Aug. 10, 2021) (collecting cases). *But see Zillow Grp., Inc. v. Midwest Real Est. Data LLC*, No. 1:26-CV-5451, 2026 WL 2720638, at *4 (N.D. Ill. Sept. 15, 2026) (rejecting the consensus view "that a mere reference to a set of rules can constitute the 'heightened standards' requiring the parties' 'clear

and unmistakable' 'manifestation of intent' to delegate questions of arbitrability to the arbitrator"); *Taylor v. Samsung Elecs. Am., Inc.*, No. 19 C 4526, 2020 WL 1248655, at *4–5 (N.D. Ill. Mar. 16, 2020) ("It is hard to see how an agreement's bare incorporation by reference of a completely separate set of rules that includes a statement that an arbitrator has authority to decide validity and arbitrability amounts to 'clear and unmistakable' evidence that the contracting parties agreed to delegate those issues to the arbitrator and preclude a court from answering them. . . . The language of the [AAA] rule does not suggest a delegation of authority; at most it indicates that the arbitrator possesses authority, which is not the same as an agreement by the parties to give him sole authority to decide those issues."). The Firm does not take issue with this principle generally but argues that because the arbitration provision in the Service Agreement includes a carve-out, the carve-out overrides the delegation provision as it relates to disputes over fees paid to Tandem.

The arbitration provision here states that "[i]f there is a dispute between the Parties concerning any aspect of their relationship or this Agreement, *except for the payment of fees to Tandem*, either Party to such dispute may elect to arbitrate the dispute." Doc. 1-2 at 41 (emphasis added). The Firm contends that because of "[t]he way the agreement is written . . . the AAA rules (and resulting delegation) only apply to disputes that fall outside of the arbitration clause's carve-out." *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 279 (5th Cir. 2019). In other words, the Firm maintains that "if a case falls within the carve-out, the agreement does not incorporate the AAA rules and the gateway arbitrability question is not delegated to an arbitrator." *Id.* The Firm analogizes to the arbitration provision in *Archer*, which provided that "[a]ny dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual

property . . . ), shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association." *Id.* at 277. In *Archer*, the Fifth Circuit found "the placement of the carve-out . . . dispositive," with the "most natural reading" reflecting that the agreement delegated arbitrability "for all disputes *except* those under the carve-out." *Id.* at 281.

The Court disagrees with the Firm's argument and the Fifth Circuit's reasoning, however. Initially, while the carve-out in *Archer* was in the same sentence as the incorporation of the AAA rules, here, the carve-out is found several sentences before the incorporation of the AAA rules. This suggests that the carve-out "goes to the *scope of the agreement*—a question that the agreement otherwise delegates to the arbitrator—not the *scope of the arbitrator's authority* to decide questions of 'arbitrability.'" *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 848 (6th Cir. 2020). Moreover, the Firm's and *Archer*'s interpretation of the arbitration provision would render the delegation provision provided by the AAA rules superfluous, with the arbitrator "hav[ing] the power to determine the scope of the agreement *only* as to claims that fall within the scope of the agreement." *Id.* at 847. But "as the Supreme Court made clear, who decides the question of arbitrability is distinct from whether the parties agreed to arbitrate a claim." *Hammond, Kennedy, Whitney & Co., Inc. v. Freudenberg N. Am. Ltd. P'ship*, No. 22-CV-04394, 2023 WL 2525026, at *2 (N.D. Ill. Mar. 15, 2023) (citing *First Options*, 514 U.S. at 942). As a result, the Firm cannot avoid the delegation provision merely by framing its claims as disputes about fees paid to Tandem. *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1075–76 (9th Cir. 2013) ("Oracle's argument conflates the *scope* of the arbitration clause, *i.e.,* which claims fall within the carve-out provision, with the question of *who* decides arbitrability."). Therefore, an arbitrator, and not the Court, must determine whether the Firm's claims fall within the arbitration provision.

This does not end the analysis, however, because the Firm argues that its claims against Vensure must remain pending in this Court because, as a non-signatory to the Service Agreement, Vensure cannot compel arbitration of the claims against it. Although Vensure argues otherwise, "the issue of whether [Vensure] has any right as a non-signatory to compel arbitration with [the Firm] goes to contract formation and must be decided by the Court." *O'Connor v. Ford Motor Co.*, No. 19-CV-5045, 2023 WL 130522, at *6 (N.D. Ill. Jan. 9, 2023). Illinois courts have "recognized five contract-based doctrines through which a nonsignatory may be bound by an arbitration agreement entered into by others: '(1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference.'" *Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 857 (7th Cir. 2015) (quoting *Zurich*, 417 F.3d at 687).

Although the Firm alleged in its complaint that Vensure assumed Tandem's contractual obligations and liabilities, it argues in response to Defendants' motion that none of the doctrines that would allow a non-signatory to compel arbitration apply to Vensure. Vensure itself "reserves all rights to argue that it is not bound by the Service Agreement" but argues that the Court should nonetheless take as true the Firm's allegation that it did assume the Service Agreement for purposes of the motion to compel arbitration. Doc. 18 at 8 n.4; *see also* Doc. 23 at 7 n.3. The Court does not have sufficient facts before it to determine whether Vensure assumed the Service Agreement and so would need additional information before making such a determination. *See Meinders*, 800 F.3d at 858–59 (remanding to the district court to resolve question of whether non-signatory assumed an agreement and instructing that the district court should permit discovery to allow a fuller development of the factual issues). As such, the Court cannot compel arbitration of the claims against Vensure based on an assumption theory.

Vensure alternatively argues that allowing the Firm to base its claims on the fact that Vensure assumed the Service Agreement but then to avoid arbitration of those claims by arguing that Vensure cannot enforce that agreement's arbitration provision is fundamentally unfair, with estoppel applying to require arbitration. *See Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 838–39 (7th Cir. 1981) (stating that a plaintiff cannot claim that a non-signatory is liable for failing to perform under a contract while also denying that the non-signatory is a party to the contract in order to avoid arbitration, emphasizing that a "plaintiff cannot have it both ways" and "cannot rely on the contract when it works to its advantage, and repudiate it when it works to its disadvantage"). But "[a] nonparty's right to enforce an arbitration agreement is governed by state law," *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021), and Illinois has declined to adopt the *Hughes* version of equitable estoppel on which Vensure relies, *Ervin v. Nokia, Inc.*, 349 Ill. App. 3d 508, 515–16 (2004); *see also Sosa*, 8 F.4th at 642 (rejecting argument that Illinois courts would adopt the federal standard of estoppel articulated in *Hughes* and other cases). Instead, under Illinois law, "[a] claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person." *Sosa*, 8 F.4th at 641 (quoting *Ervin*, 349 Ill. App. 3d at 514). Vensure has not argued detrimental reliance, and so it cannot establish that equitable estoppel requires compelling the Firm's claims against it to arbitration. *See Matricciani v. Am. Homeowner Pres., Inc.*, 718 F. Supp. 3d 825, 844 (N.D. Ill. 2024). The claims against Vensure must remain before this Court.

Although Vensure raises arguments for why the Court should dismiss the Firm's claims against it under Rule 12(b)(6), the Court in its discretion finds it more appropriate to stay these claims and defer resolution of Vensure's Rule 12(b)(6) arguments until after the arbitration of the

Firm's claims against Tandem concludes. *See id.* (staying claims asserted against a related defendant that had not signed the arbitration agreement). The Court therefore compels arbitration of the Firm's claims against Tandem and stays all proceedings in this case pending resolution of the arbitration.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to compel arbitration and stay or, in the alternative, to dismiss and strike class allegations [18]. The Court dismisses Dworkin as a Plaintiff. The Court compels the Firm to arbitrate its disputes against Tandem. The Court stays this case pending the completion of the arbitration.

Dated: October 14, 2026

SARA L. ELLIS
United States District Judge